UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **VICTOR DIAZ,** | § | |
| **TDCJ No. 1885162,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **V.** | § | CIVIL NO. SA-16-CA-356-DAE (PMA) |
| | § | |
| **JAMES TOCCI,** | § | |
| **MARILISA JANSSEN,** | § | |
| **SHARON MACRAE,** | § | |
| **RICHARD MOLINA,** | § | |
| **WENDI WILSON-ORTIZ,** | § | |
| **SUSAN D. REED,** | § | |
| **CORNELIUS NOEL COX,** | § | |
| **MELISSA SKINNER,** | § | |
| **SAN ANTONIO POLICE DEPARTMENT,** | § | |
| **JUANITA GONZALES,** | § | |
| **ANTHONY RAMIREZ, and** | § | |
| **CHARLES SPEARS,** | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Victor Diaz, currently an inmate at the Texas Department of Criminal Justice's Boyd Unit, filed this civil rights action pursuant to 42 U.S.C. § 1983 in the Southern District of Texas naming as defendants various state prison officials, as well as several state district judges, prosecuting attorneys, criminal defense counsel, and local law enforcement officials whom plaintiff alleges were involved in conspiracies to have plaintiff convicted in Bexar County cause nos. 2010-CR-10591 and 2013-CR-1116.  The United States District Court for the Southern District of Texas transferred plaintiff's claims, which collaterally attacked his two state criminal convictions, to this Court.  For the reasons set forth below, plaintiff's claims are summarily dismissed as frivolous.

1

## I. Factual Background and Procedural History

Public records maintained by the Texas Department of Criminal Justice and Texas Court of Criminal Appeals reveal that (1) plaintiff was convicted in Bexar County cause no. 2010-CR-10581 on a charge of assault upon a family member and sentenced on December 10, 2010 to serve a two-year term of incarceration; (2) plaintiff was convicted in Bexar County cause no. 2013-CR-1116 of aggravated assault with a deadly weapon and sentenced on September 26, 2013 to serve a ten-year term of incarceration; (3) plaintiff filed a state habeas corpus application (WR-79,542-01) in May, 2013 attacking his conviction in cause no. 2010-CR-10581. The Texas Court of Criminal Appeals dismissed this petition on May 29, 2013, because plaintiff's sentence had already been discharged; (4) plaintiff attempted to appeal from his conviction in cause no. 2013-CR-1116 but the Texas Fourth Court of Appeals dismissed the appeal because he had entered into a plea bargain waiving his right to appeal, *see Diaz v. State*, 04-13-00722-CR, 2013 WL 6672809 (Tex. App. – San Antonio Dec. 18, 2013, *no pet.*); (5) plaintiff filed a motion for extension of time to file a petition for discretionary review (but no actual petition for discretionary review), which the Texas Court of Criminal Appeals denied on April 17, 2014 (PD-0491-14); (6) plaintiff filed an original mandamus action in the Texas Court of Criminal Appeals in November, 2014 which the Texas Court of Criminal Appeals denied without an order on January 14, 2015 (WR-79,542-02); and (7) plaintiff filed a second state habeas corpus application attacking his conviction in 2010-CR-10581 (WR-79,542-03) which the Texas Court of Criminal dismissed because plaintiff's sentence had already been discharged.

There is no evidence in the public record and no allegation currently before this Court establishing that either of plaintiff's state criminal convictions has ever been reversed, vacated, or otherwise abrogated.

In his original § 1983 complaint in this cause (ECF no. 1), plaintiff asserted claims against various state district judges, prosecuting attorneys, his former criminal defense counsel, and several San Antonio Police officers.   Plaintiff alleged those defendants conspired in unspecified ways to have plaintiff convicted of criminal offenses in each of the two state criminal cases referenced above.  Plaintiff alleged in conclusory fashion that various state district judges, prosecutors, and court-appointed criminal defense counsel conspired to have plaintiff convicted of both his assault charges by (1) the prosecution's withholding of unspecified evidence from the defense in violation of the rule announced in *Brady v. Maryland*; (2) his defense counsel turning over unidentified documents to the prosecution; (3) the prosecution engaging in vindictive and selective prosecution; (4) the state courts disregarding exculpatory affidavits signed by Rebecca DeLeon, Baldemar DeLeon, and Jose J. Aguirre; (5) the prosecution illegally indicting plaintiff in both cause no. 2010-CR-10581 and 2013-CR-1116; (6) his defense counsel (attorneys Tocci and Cox) failing to request a *Gerstein* hearing and coercing plaintiff to plead guilty to both the criminal charges; and (7) the defendants collectively conspired to commit the foregoing violations of plaintiff's constitutional rights.

In addition, plaintiff complained about events surrounding his arrest and prosecution. More specifically, plaintiff alleged police officers (1) employed excessive force and filed false reports in connection with plaintiff's arrest on or about August 30, 2012; (2) entrapped plaintiff in a manner resulting in plaintiff's arrest on an aggravated robbery charge; and (3) illegally seized property belonging to plaintiff during or in connection with plaintiff's arrests.  Plaintiff sought monetary damages against each named defendant in the amount of one million dollars, as well as punitive and "putative" monetary damages.

In a Show Cause Order issued April 18, 2016 (ECF no. 4), the Magistrate Judge pointed out that (1) plaintiff's claims collaterally attacking plaintiff's state criminal convictions appeared to be barred by the rule announced by the Supreme Court in *Heck v. Humphrey*; (2) plaintiff's claims against the individual defendants appeared to be foreclosed by the doctrines of absolute judicial immunity, prosecutorial immunity, and qualified immunity; (3) plaintiff's claims against his former defense counsel failed to show those attorneys acted under color of state law; and (4) plaintiff's claims challenging his arrest and alleged property loss in 2012 appeared to be barred by the two-year statute of limitations applicable to § 1983 claims in Texas.  The Magistrate Judge directed plaintiff to file an amended complaint addressing the many deficiencies and defects noted in plaintiff's original complaint.

On May 31, 2016 (ECF no. 10), after requesting and twice obtaining extensions of time, plaintiff filed his amended complaint, in which he (1) argued he did not discover the factual bases for his challenges to his aggravated assault conviction (which plaintiff misidentified as an "aggravated robbery" conviction) until he obtained his case file from his attorney on February 4, 2014; (2) argued the two trial judges named as defendants in his original complaint were divested of their absolute judicial immunity because (a) Judge MacRae wrongfully convicted plaintiff of assault in a bench trial after willfully concealing unidentified exculpatory evidence and forcing plaintiff to endure an eight-month period of pretrial detention, and (b) Judge Skinner failed to render justice in plaintiff's aggravated assault case and "continuing on the factory system of criminal injustice because there judges have power and Plaintiff at the time was ignorance of the law;" (3) referenced a non-existent Fifth Circuit Order in appellate cause no. 14-

50061, allegedly issued December 10, 2014;[1] (4) argued there was no probable cause to arrest plaintiff for aggravated robbery or aggravated assault with a deadly weapon because no knife was found at the crime scene; and (5) argued this Court should ignore the Supreme Court's holding in *Heck v. Humphrey*.

## II. <u>Standard for Review Under Sections 1915(e) (2) (B) & 1915A</u>

A complaint filed by a prisoner may be dismissed as frivolous regardless of whether any filing fee or portion thereof had been paid. *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998), *cert. denied*, 527 U.S. 1041 (1999). Title 28 U.S.C. § 1915(e) accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complainant's factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). In an action filed *in forma pauperis*, a court may raise sua sponte the issue of whether an action is malicious or frivolous under § 1915(e). *Neitzke v. Williams*, 490 U.S. at 327. Dismissal of a claim as frivolous under § 1915(e) is permissible where the claim lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. at 325; *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013). A complaint lacks an arguable

---

[1] More specifically, plaintiff refers to the case of "<u>Flores v. Bexar County District Attorney, et al., U.S. Appeal No. 14-50061</u>, (5th Cir. Dec. 10th, 2014) Remanded from Certiorari on July 16, 2015." (ECF no. 10 at 8).

In point of fact, Fifth Circuit appeal no. 14-50061 was an appeal from an Order issued July 24, 2013 by this Court in cause no. 5:13-cv-002-FB, styled *Reynaldo Flores v. San Antonio Police Dept, et al.*. In an unpublished Order issued November 4, 2014, the Fifth Circuit dismissed plaintiff's appeal from this Court's Judgment of dismissal based upon the plaintiff's failure to timely file a Notice of Appeal. *Flores v. San Antonio Police Dept., et al.*, no. 14-50061 (5th Cir. Nov. 4, 2014). Contrary to plaintiff's allegations in his Amended Complaint, however, the United States Supreme Court did not reverse or remand the Fifth Circuit's Order dismissing the appeal in appellate cause no. 14-50061. In fact, the plaintiff in appellate cause no. 14-50061 never filed a petition for writ of certiorari with the United States Supreme Court.

basis in law if it is based on an indisputably meritless legal theory. *Rogers v. Boatright*, 709 F.3d at 407; *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. at 32-33; *Rogers v. Boatright*, 709 F.3d at 407; *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (holding dismissal as frivolous appropriate after the plaintiff is given an opportunity to amend or allege additional facts through answers to a post-complaint questionnaire), *cert. denied*, 560 U.S. 944 (2010). This Show Cause Order is intended to comply with the foregoing suggestions by furnishing plaintiff with notice of the deficiencies in his original complaint and an opportunity to file an amended complaint which does allege specific facts sufficient to avoid summary dismissal of his claims herein as frivolous.

### III. <u>Section 1983 Generally</u>

42 U.S.C. § 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of federal statutory and constitutional rights. *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013), *cert. denied,* 134 S. Ct. 1789 (2014). There are two essential elements to a Section 1983 action: (1) the conduct in question must be committed by a person acting under color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or the laws of the United States. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014).

### IV. <u>*Heck v. Humphrey* Foreclosure</u>

In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court unequivocally held that no cause of action exists under § 1983 for state prisoners who bring civil rights actions for allegedly unconstitutional conviction or imprisonment, or otherwise collaterally attacking the

constitutionality of the convictions that form the basis for their incarceration, <u>unless</u> the state prisoner can show that the state criminal conviction he is collaterally attacking has been invalidated by a state appellate court, a state or federal habeas court, or some other state authority with jurisdiction to do so.  *See Heck v. Humphrey*, 512 U.S. at 486-87:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under §1983. * * * Even a prisoner who has fully exhausted available state remedies has no cause of action under §1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.

The Fifth Circuit has applied this rule in a wide range of contexts.  *See, e.g., Morris v. McAllester*, 702 F.3d 187, 189-90 (5th Cir. 2012), *cert. denied*, 134 S. Ct. 80 (2013); *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008); *Cronn v. Buffington*, 150 F.3d 538, 541 & n.2 (5th Cir. 1998) (holding a federal prisoner bringing a *Bivens* action collaterally attacking the revocation of his federal parole first had to successfully challenge that revocation); *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (holding a prisoner's claims of ineffective assistance and state trial court deficiencies had to be pursued first in habeas corpus actions and that claims for monetary damages were foreclosed by *Heck*); *Hudson v. Hughes*, 98 F.3d 868, 872-73 (5th Cir. 1996); *Hamilton v. Lyons*, 74 F.3d 99, 102-03 (5th Cir. 1996) (applying the rule in *Heck* to collateral attacks upon a criminal conviction and parole revocation arising from an allegedly coerced confession and the suppression, destruction, and alteration of evidence); *Littles v. Board of Pardons and Paroles Division*, 68 F.3d 122, 123 (5th Cir. 1995) (applying the rule in *Heck* to a

challenge to a parole-revocation proceeding); *Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995); *Hulsey v. Owens*, 63 F.3d 354, 355 n.2 (5th Cir. 1995).

In this case, there is no factual allegation nor any evidence available from the public record showing either of the two convictions which plaintiff seeks to collaterally attack in this § 1983 action has ever been reversed. vacated, or otherwise abrogated. This Court's independent review of available state appellate court records reveals no state appellate court opinion or order reversing, vacating, or otherwise abrogating either of plaintiff's most recent Bexar County convictions. A Section 1983 cause of action for malicious prosecution does not accrue unless and until the underlying criminal prosecution terminates favorably to the plaintiff.

Based upon the information contained in plaintiff's pleadings and public records currently available to this Court, it appears undisputed that neither of the state criminal proceedings which resulted in plaintiff's convictions in Bexar County cause nos. 2010-CR-10581 or 2013-CR-1116 has ever terminated in a manner favorable to plaintiff. Under the well-settled rule announced in Heck, before prevailing on a malicious prosecution theory, the plaintiff has the burden of establishing that his criminal prosecution has terminated in a manner favorable to him. *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). *Brandley v. Keeshan*, 64 F.3d at 199 (*quoting Heck v. Humphrey*, 512 U.S. at 489, 114 S. Ct. at 2373).

The Fifth Circuit has broadly construed the Supreme Court's opinion in *Heck* to foreclose any civil rights claim that might result in a judgment that would necessarily imply the invalidity of the plaintiff's conviction. *Edwards v. Balisok*, 520 U.S. at 646-49; *Heck v. Humphrey*, 512 U.S. at 486-87; *Arvie v. Broussard*, 42 F.3d 249, 250 (5th Cir. 1994) (holding that, where a suit brought pursuant to § 1983 challenges the legality of the plaintiff's conviction, the claim is not cognizable unless the conviction has been invalidated); *Boyd v. Biggers*, 31 F.3d at 282-83

(holding the same).  Plaintiff has failed to allege any specific facts showing either of his Bexar County convictions has ever been reversed, vacated, or otherwise abrogated.  His attempts to collaterally those convictions are foreclosed by the Supreme Court's holding *Heck* and are legally frivolous.

## V. <u>Limitations in § 1983 Actions</u>

Plaintiff signed his original complaint in this action on September 7, 2015.  Plaintiff alleges that, on August 30, 2012, he was arrested illegally, subjected to excessive force, and had personal property illegally confiscated from him.  Plaintiff alleges officers of the San Antonio Police Department were responsible for those violations of his federal constitutional rights.  Plaintiff alleges no facts showing he was unaware at the time of his August, 2012 arrest of any of the facts to support his claims that his arrest was illegal, he was subjected to excessive force during that arrest, or that his property was illegally taken during or in connection with that arrest.  Thus, plaintiff fails to allege any facts showing he was unaware at the time of his arrest of the factual bases for his claims against the San Antonio Police officers named as defendants in this lawsuit.

There is no federal statute of limitations for § 1983 actions.  *Hardin v. Straub*, 490 U.S. 536, 538 (1989) ("Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law."); *Edmonds v. Oktibbeha County, Miss.,* 675 F.3d 911, 916 (5th Cir. 2012); *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998); *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995); *Henson-El v. Rogers*, 923 F.2d 51, 52 (5th Cir. 1991), *cert. denied*, 501 U.S. 1235 (1991).  Therefore, the Supreme Court has directed federal courts to borrow the forum state's general personal injury limitations period.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v. Okure*, 488 U.S. 235, 249-50 (1989);

*Edmonds v. Oktibbeha County, Miss.,* 675 F.3d at 916; *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999).

In Texas, the applicable limitations period is two years. *Crostley v. Lamar County, Texas,* 717 F.3d 410, 421 (5th Cir. 2013); *Cuadra v. Houston Independent School District,* 626 F.3d 808, 814 n.7 (5th Cir. 2010), *cert. denied,* 131 S. Ct. 2972 (2011); *Whitt v. Stephens County,* 529 F.3d 278, 282 (5th Cir. 2008); *Price v. City of San Antonio, Tex.,* 431 F.3d 890, 892 (5th Cir. 2005) ("There is no dispute that the applicable statute provides that claims must be brought 'not later than two years after the day the cause of action accrues.'"); *Piotrowski v. City of Houston,* 237 F.3d at 576.

Although state law controls the limitations period for § 1983 claims, federal law determines when the cause of action accrues. *Wallace v. Kato,* 549 U.S. at 388 ("the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."); *Cuadra v. Houston Independent School District,* 626 F.3d at 814 n.7; *Walker v. Epps,* 550 F.3d 407, 414 (5th Cir. 2008), *cert. denied,* 558 U.S. 829 (2009).  Under the federal standard, the time of accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *Edmonds v. Oktibbeha County, Miss.,* 675 F.3d at 916 ("Under federal law, the statute of limitations under § 1983 begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."); *Cuadra v. Houston Independent School District,* 626 F.3d at 814 n.7; *Walker v. Epps,* 550 F.3d at 414; *Piotrowski v. City of Houston,* 237 F.3d at 576; *Piotrowski v. City of Houston,* 51 F.3d 513, 516 (5th Cir. 1995); *Gartrell v. Gaylor,* 981 F.2d 254, 257 (5th Cir. 1993); *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir. 1987).

State law governs the tolling of limitations for § 1983 claims.  *Hardin v. Straub*, 490 U.S. at 539 (holding limitations periods in Section 1983 suits are to be determined by reference to appropriate state statutes and coordinate tolling rules); *Board of Regents of University of State of New York v. Tomanio,* 446 U.S. 478, 484 (1980); *Walker v. Epps*, 550 F.3d at 415; *Cruz v. Louisiana ex rel. Dept. of Public Safety and Corrections*, 528 F.3d 375, 378 n.7 (5th Cir. 2008); *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).

A § 1983 cause of action for malicious prosecution, such as the one plaintiff has brought in this action, accrues when the criminal proceeding against the plaintiff finally terminates favorably to the plaintiff.  *Heck v. Humphrey*, 512 U.S. at 486-87; *Eugene v. Alief I.S.D.*, 65 F.3d 1299, 1306 (5th Cir. 1995); *Brandley v. Keeshan*, 64 F.3d 196, 199 (5th Cir. 1995), *cert. denied*, 516 U.S. 1129 (1996); *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991), *cert. denied*, 504 U.S. 965 (1992).  Plaintiff has not alleged any facts showing that his causes of action for malicious prosecution have yet accrued.  For the reasons discussed above, however, this fact does not prevent the summary dismissal of his civil rights action collaterally attacking his state criminal convictions.

As explained above, insofar as plaintiff complains about the events surrounding his arrest in August, 2012, he alleges no facts showing he was unaware at that time of either (1) his allegedly illegal arrest, (2) the alleged use of excessive force against him, or (3) the alleged illegal taking of his property.  Nor does plaintiff allege any facts showing any legal impediment prevented him from presenting his illegal arrest, excessive force, or illegal taking of property claims to the state or federal courts in a timely manner.  Thus, plaintiff's complaints about his allegedly illegal arrest, the alleged use of excessive force against him and the alleged taking of his property in August, 2012, i.e., the bases for plaintiff's claims against the San Antonio Police

Department and various San Antonio Police officers named as defendants in this § 1983 action appear to be barred by the two-year statute of limitations.

## VI. <u>Absolute Judicial Immunity</u>

Insofar as plaintiff seeks to recover monetary damages from the state district judges named as defendants in this lawsuit, plaintiff's claims are barred by the doctrine of absolute judicial immunity. "The federal civil rights laws do not provide a vehicle to attack state court judgments nor to sanction the conduct of state court judges for actions taken within the scope of their judicial authority." *Bogney v. Jones*, 904 F.2d 272, 274 (5th Cir. 1990). It is hornbook law, settled in our jurisprudence for over a century, that a judge enjoys absolute immunity from liability for damages for judicial acts performed within his jurisdiction. *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). The doctrine of absolute judicial immunity protects judges from liability for all actions taken in their judicial capacities, so long as they do not act in a clear absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-58 (1978); *Davis v. Tarrant County, Texas*, 565 F.3d 214, 221 (5th Cir.), *cert. denied*, 558 U.S. 1024 (2009); *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). It is well-settled that the doctrine of absolute judicial immunity protects judicial officers not only from liability, but also from suit. *Mireles v. Waco*, 502 U.S. at 11; *Davis v. Tarrant County, Texas*, 565 F.3d at 221; *Ballard v. Wall*, 413 F.3d at 515. The doctrine of absolute judicial immunity applies to judicial acts of judges acting within their jurisdiction even in suits brought pursuant to Title 42 U.S.C. Section 1983. *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

Absolute judicial immunity is overcome in only two rather narrow sets of circumstances: first, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity, and second, a judge is not immune for actions, though judicial in

nature, taken in complete absence of all jurisdiction.  *Mireles v. Waco*, 502 U.S. at 11-12; *Davis v. Tarrant County, Texas*, 565 F.3d at 221; *Ballard v. Wall*, 413 F.3d at 515.  Examination of the cases cited by the Supreme Court in its opinion in *Mireles* illuminates the narrowness of each such exception to the general rule of absolute judicial immunity.  As an example of the first exception, i.e., non-judicial actions, the Supreme Court cited in *Mireles* to its opinion in *Forrester v. White*, 484 U.S. 219 (1988), in which it held that a judge was not immune from liability for allegedly having engaged in illegal discrimination when firing a court employee. *Forrester v. White*, 484 U.S. at 225-29.  To help define the parameters of the second exception, i.e., actions taken in complete absence of all jurisdiction, the Supreme Court cited to its opinions in *Bradley v. Fisher*, 13 Wall. 335, 351-52, 20 L.Ed. 646 (1872) (in which it discussed a hypothetical situation in which a judge in a probate court with limited statutory jurisdiction attempted to try parties for public criminal offenses), and *Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978) (in which the Supreme Court held a state judge presiding over a court of general jurisdiction absolutely immune from liability for issuing an order permitting a mother to sterilize her intellectually and developmentally disabled fifteen year old daughter, despite the fact the judge had arguably violated state statutes relating to the sterilization of minors and incompetent persons in so doing).

This Court takes judicial notice of the fact that, at all times relevant to plaintiff's claims herein, Judges Skinner and MacRae served as Texas state district judges, a position which, like the state judge involved in *Stump v. Sparkman*, involves presiding over a state trial court of general jurisdiction.  Plaintiff's conclusory assertions in his Amended Complaint are insufficient to overcome the defense of judicial immunity.  The fact plaintiff disagrees with the rulings made by his state trial court judges does not, standing alone, establish those rulings were taken in a

complete absence of all jurisdiction or that those judges were acting outside the scope of their official judicial duties when they made the rulings adverse to plaintiff.

Judges are absolutely immune from an action for damages for acts performed in their judicial capacities, even when such acts are alleged to have been done maliciously or corruptly. *Mireles v. Waco*, 502 U.S. at 11; *Stump v. Sparkman*, 435 U.S. at 356-58; *Ballard v. Wall*, 413 F.3d at 515; *Mays v. Sudderth*, 97 F.3d at 111; *Brandley v. Keeshan*, 64 F.3d at 200-01; *Davis v. Bayless*, 70 F.3d at 373; *Boyd v. Biggers*, 31 F.3d at 284; *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993).  A judge is absolutely immune for all judicial acts "not performed in clear absence of all jurisdiction however erroneous the act and however evil the motive."  *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).  "[A]bsolute immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions."  *Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991), *cert. denied*, 504 U.S. 965 (1992).  Thus, a plaintiff cannot overcome judicial immunity merely by making allegations of bad faith or malice.  *Mireles v. Waco*, 502 U.S. at 11; *Ballard v. Wall*, 413 F.3d at 515; *Malina v. Gonzales*, 994 F.2d at 1125.  *Mitchell v. McBryde*, 944 F.2d at 230. Mistakes or erroneous rulings do not deprive a judge of all jurisdiction.  *Stump v. Sparkman*, 435 U.S. at 359 ("grave procedural errors do not deprive a judge of all jurisdiction.").  Likewise, mere allegations a judge performed judicial acts pursuant to a bribe or a conspiracy will not suffice to overcome absolute immunity.  *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir.), *cert. denied*, 474 U.S. 1037 (1985).  "The federal civil rights laws do not provide a vehicle to attack state court judgments nor to sanction the conduct of state court judges for actions taken within the scope of their judicial authority."  *Bogney v. Jones*, 904 F.2d at 274 (upholding the

14

imposition of Rule 11 sanctions based upon a civil rights plaintiff's assertion of claims against a state district judge).

For these reasons, plaintiff's allegations of bad faith, malice, and conspiracy against Judges MacRae and Skinner fail to state a cognizable cause of action under the federal civil rights laws.  Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes.  *Ballard v. Wall*, 413 F.3d at 517;  *Malina v. Gonzales*, 994 F.2d at 1125; *Adams v. McIlhany*, 764 F.2d at 298.   For purposes of immunity, the judge's jurisdiction is construed broadly and a judge is not deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.  *Davis v. Bayless*, 70 F.3d at 373.  Because some of the most difficult questions a judge must decide relate to the scope of his own jurisdiction, the proper inquiry is not whether the judge actually had jurisdiction, or even whether the court exceeded its jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power.  *Ballard v. Wall*, 413 F.3d at 517; *Davis v. Bayless*, 70 F.3d at 373.

Furthermore, while the doctrine of judicial immunity applies to claims against judges in their individual capacities, Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities.  *Warnock v. Pecos County, Texas*, 88 F.3d 341, 343 (5th Cir. 1996); *Holloway v. Walker*, 765 F.2d 517, 519 (5th Cir. 1985), *cert. denied*, 474 U.S. 517 (1985).  Thus, plaintiff's monetary damage claims against Judges MacRae and Skinner, in both their individual and official capacities, are foreclosed by the doctrine of absolute judicial immunity and the Eleventh Amendment.

## VII. <u>Prosecutorial Immunity</u>

Prosecutors are absolutely immune from liability under the federal civil rights statutes with regard to actions taken by them within the course and scope of representing the governmental agencies and subdivisions in judicial proceedings. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 & n.33 (1976); *Mowbray v. Cameron County*, 274 F.3d 269, 276 (5th Cir. 2001), *cert. denied*, 535 U.S. 1055 (2002). Under the doctrine of prosecutorial immunity, a prosecutor is absolutely immune in a civil rights lawsuit for any action taken in connection with a judicial proceeding. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269-73 (1993); *Burns v. Reed*, 500 U.S. 478, 487-92 (1991); *Imbler v. Pachtman*, 424 U.S. at 427-31, 96 S. Ct. at 993-95; *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997), *cert. denied*, 522 U.S. 828 (1997); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996); *Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir. 1995); *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994); *Booker v. Koonce*, 2 F.3d 114, 116 (5th Cir. 1993); *Graves v. Hampton*, 1 F.3d 315, 318 & n.9 (5th Cir. 1993). "[A]cts undertaken by the prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Boyd v. Biggers*, 31 F.3d at 285 (*quoting Buckley v. Fitzsimmons*, 509 U.S. at 273).

Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process. *See Kalina v. Fletcher*, 522 U.S. 118, 128-29 (1997) (holding a prosecutor is absolutely immune in connection with the initiation of a criminal proceeding except when personally acting as a complaining witness); *Mowbray v. Cameron County*, 274 F.3d at 276-77; *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001), *cert. denied*, 534 U.S. 817 (2001); *Esteves v. Brock*, 106 F.3d at 677; *Hudson v. Hughes*, 98 F.3d at 873. Thus, a prosecutor is absolutely immune from civil rights liability for actions taken in

connection with a judicial proceeding, even if taken maliciously. *Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003).

"To determine whether prosecutorial immunity applies, we thus ask '(1) whether, at the time of § 1983's enactment, the practical function of the conduct at issue merited absolute immunity, and (2) whether, at present, absolute immunity for the conduct at issue is necessary to advance the policy interests that justified the common law immunity.'" *Lampton v. Diaz*, 639 F.3d 223, 226 (5th Cir. 2011); *Hoog-Watson v. Guadalupe County, Texas*, 591 F.3d 431, 438 (5th Cir. 2009). *But see Van de Kamp v. Goldstein*, 555 U.S. 335, 341-49 (2009).

In addition, even if the actions about which plaintiff complains herein were undertaken by the prosecutor without regard to any pending judicial proceeding, the prosecutor is still entitled to the protection afforded by the doctrine of qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. at 273; *Burns v. Reed*, 500 U.S. at 495-96; *Brown v. Lyford*, 243 F.3d at 189-90 (a special prosecutor was entitled to qualified immunity with regard to complaints about his investigation into an alleged offense); *Hughes v. Tarrant County Texas*, 948 F.2d 918, 923 n.3 (5th Cir. 1991); *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988); *Marrero v. City of Hialeah*, 625 F.2d 499, 504-10 (5th Cir. 1980), *cert. denied sub nom. Rashkind v. Marrero*, 450 U.S. 913 (1981).  For instance, a prosecutor does not enjoy absolute immunity for such actions as acting as a complaining witness *(Kalina v. Fletcher*, 522 U.S. at 124-31), or filing a motion to remove a fugitive complaint from a county court criminal docket (*Sanchez v. Swyden*, 139 F.3d 464, 466-69 (5th Cir. 1998), *cert. denied*, 525 U.S. 872 (1998)) but nonetheless is entitled to assert qualified immunity as a defense in civil actions challenging those actions. *Buckley v. Fitzsimmons*, 509 U.S. at 273; *Burns v. Reed*, 500 U.S. at 495-96.  The determination of whether a prosecutor's actions are entitled to absolute, as opposed to merely qualified,

17

immunity turns on a functional approach under which the prosecutor is absolutely immune when acting as an advocate for the State.  *Burns v. Reed*, 500 U.S. at 491; *Mowbray v. Cameron County*, 274 F.3d at 276-77.

Plaintiff has alleged no specific facts showing that the actions of prosecuting attorneys Reed, Molina, Janssen, and Wilson-Ortiz outside the proper scope of the duties of a prosecuting attorney or outside the advocacy role of a prosecutor.  Instead, plaintiff alleges in conclusory fashion only that these defendants conspired with plaintiff's criminal defense counsel and state district judges without offering any clue as to how this alleged conduct impinged upon plaintiff's federal constitutional rights.   In short, plaintiff has failed to allege any specific facts showing defendants Reed, Molina, Janssen, or Wilson-Ortiz's alleged conduct in connection with either of plaintiff's state criminal proceedings took place in any context other than those defendants' roles as state prosecutors.

## VIII. Qualified Immunity

As public officials and employees performing discretionary tasks, defendants Reed, Molina, Wilson-Ortiz, Janssen, Gonzales, Ramirez, and Spears are entitled to the benefits of the doctrine of qualified immunity.  Even when a state official or other person acting under color of state law engages in constitutionally impermissible conduct, the defendant may nevertheless be shielded from liability for civil damages if the defendant's actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).   "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. Al–Kidd,* 563 U.S. 731, 743 (2011); *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

18

The defense of qualified immunity first recognized in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), is neither a complete barrier to recovery nor a true affirmative defense. A party seeking damages from an official asserting *Harlow* qualified immunity bears the burden of overcoming that defense. *McCreary v. Richardson*, 738 F.3d at 655; *Wyatt v. Fletcher*, 718 F.3d 496, 802 (5t5h Cir. 2013); *Crostley v. Lamar County, Texas*, 717 F.3d 410, 422 (5th Cir. 2013). The Fifth Circuit has authorized the dismissal as frivolous of civil rights claims which fail to establish a violation of the plaintiff's "clearly established" federal rights. *See Moore v. Carwell*, 168 F.3d 234, 236-37 (5th Cir. 1999) (affirming summary dismissal of complaint against state prison officials as frivolous, on qualified immunity grounds). An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity. *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998); *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009), *cert. denied sub nom. Ashabranner v. Goodman*, 558 U.S. 1148 (2010); *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 418 (5th Cir. 2008) (holding the same); *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (holding the same). An official acts within the scope of his authority if he discharges the duties generally assigned to him. *Tamez v. City of San Marcos, Texas*, 118 F.3d at 1091-92. For executive officers in general, qualified immunity is the norm. *Malley v. Briggs*, 475 U.S. at 340; *Harlow v. Fitzgerald*, 457 U.S. at 807; *Hope v. Pelzer*, 536 U.S. at 739-40.

The Supreme Court has admonished district courts that the *Harlow* qualified immunity is an immunity *from suit* rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court and the Fifth Circuit have also strongly encouraged district courts to dispose of §1983 lawsuits in which qualified immunity claims are apparent from the

pleadings, without resort to cumbersome and expensive discovery.  *See Siegert v. Gilley*, 500 U.S. 226, 231-302 (1991) (holding that, until a determination is made that the plaintiff's clearly established constitutional rights were violated, discovery should not be allowed); *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987); *Harlow v. Fitzgerald*, 457 U.S. at 818 ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed.").

Currently applicable constitutional standards are used in making the determination as to whether the defendant's conduct violated a plaintiff's "clearly established" constitutionally-protected right. *Siegert v. Gilley*, 500 U.S. at 231; *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006).  If the plaintiff passes this threshold, the Court must determine whether the defendant's conduct was "objectively reasonable" under legal principles as they existed at the time of the defendant's acts or omissions.  *See Wyatt v. Fletcher*, 718 F.3d at 502 (a right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right); *Easter v. Powell*, 467 F.3d at 462; *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1992).  In summary, the two-pronged qualified immunity test inquires first whether the defendant's conduct violated the plaintiff's clearly established constitutional rights and, second, whether the defendant's conduct was nonetheless objectively reasonable in light of legal principles as they existed at that time.  *Haverda v. Hays County*, 723 F.3d 586, 598 (5th Cir. 2013); *Wyatt v. Fletcher*, 718 F.3d at 502; *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012).

The Fifth Circuit Court of Appeals has also repeatedly encouraged the district courts to (1) require highly fact-specific pleading by a plaintiff in a §1983 lawsuit who attempts to overcome a plea of *Harlow* qualified immunity *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *Todd v. Hawk*, 72 F.3d at 446; *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995); and (2) permit limited discovery pending disposition of the qualified immunity issue only in those extraordinary situations in which the specific facts contained in the plaintiff's pleadings and affidavits are sufficient to defeat the defendant's claims of qualified immunity. *Reyes v. Sazan*, 168 F.3d at 161. This heightened pleading requirement applies to pro se litigants. *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 621 (5th Cir. 1992); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). "[P]laintiffs must demonstrate *prior to discovery* that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense." *Jackson v. City of Beaumont Police Department*, 958 F.2d at 620; *Reyes v. Sazan*, 168 F.3d at 161; *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *James v. Sadler*, 909 F.2d 834, 838 (5th Cir. 1990) (holding questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery). A complaint which raises the likely issue of immunity cannot be cast in broad, vague, general, indefinite, or conclusory terms, but must include detailed facts supporting the contention that the plea of immunity cannot be sustained. *Gobert v. Caldwell*, 463 F.3d 339, 348 n.27 (5th Cir. 2006); *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997). Discovery related to the applicability of qualified immunity is appropriate only when factual issues exist as to the applicability of qualified immunity. *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991).

Although the exact statement of *Harlow* qualified immunity may vary from case-to-case, as explained above, the Supreme Court and the Fifth Circuit have consistently held that, in order for a civil rights defendant pleading *Harlow* immunity to be liable, the defendant official's conduct must have violated "clearly established law", i.e., at the time of the challenged conduct, the contours of a right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right. *Ashcroft v. Al-Kidd*, 563 U.S. at 741; *Anderson v. Creighton*, 483 U.S. at 646 n.6; *Harlow v. Fitzgerald*, 457 U.S. at 818; *Wyatt v. Fletcher*, 718 F.3d at 502; *Easter v. Powell*, 467 F.3d at 462. If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *See Lewis v. University of Texas Medical Branch*, 665 F.3d 625, 631 (5th Cir. 2011); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 407-08 (5th Cir. 2007); *see also Malley v. Briggs*, 475 U.S. at 341 (1986). Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question. *Mitchell v. Forsyth*, 472 U.S. at 526. In a § 1983 lawsuit, the relevant inquiry is whether the legal right which the plaintiff asserts was violated was clearly established under federal law. *Pierce v. Smith*, 117 F.3d 866, 871 n.5 (5th Cir. 1997). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful act or omission generally turns on the "objective legal reasonableness" of the act or omission assessed in the light of the legal rules that were "clearly established" at the time it was taken. *Anderson v. Creighton*, 483 U.S. at 639. For the legal rules to be considered "clearly established," the contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right"; that is, "in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. at 640. While there need not have been a specific ruling squarely in point on the issue in

question, the law must have been sufficiently clear to put the official on notice of the impropriety of his actions. *Kinney v. Weaver*, 367 F.3d 337, 372 (5th Cir.), *cert. denied*, 543 U.S. 872 (2004); *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir.), *cert. denied*, 525 U.S. 872 (1998).  The Fifth Circuit has directed courts to initially examine Supreme Court and Fifth Circuit precedent, i.e., "controlling authority," in the course of determining whether a legal principle is "clearly established"; the law of other Circuits may be considered when "a consensus of cases of persuasive authority [is] such that a reasonable officer could not have believed that his actions were lawful."  *McClendon v. City of Columbia*, 305 F.3d 314, 328 (5th Cir.) (*en banc*), *cert. denied*, 537 U.S. 1232 (2002).  In addition, merely negligent conduct on the part of a government official cannot meet the rather stringent standard for liability under §1983.  *Daniels v. Williams*, 474 U.S. 326, 331-34 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).  Plaintiff has alleged no specific facts showing defendants Reed, Janssen, Molina, Wilson-Ortiz, Gonzales, Ramirez, or Spears committed any act or omission in connection with plaintiff's arrests or criminal prosecutions which rises above the level of ordinary negligence.

## IX. Claims Against Defense Counsel

Finally, defendants Cox and Tocci are identified by plaintiff only as attorneys who represented plaintiff in plaintiff's two state criminal proceedings.  Assuming this is an attempt by plaintiff to assert a Section 1983 claim against his own criminal defense counsel, that effort fails because plaintiff has not alleged any facts showing that either criminal defense attorney acted under color of state law while defending plaintiff.  Under ordinary circumstances, a defense attorney representing a criminal defendant is not subject to suit in a civil rights action.  *Briscoe v. LaHue*, 460 U.S. 325, 329 n.6 (1983); *Polk County v. Dodson*, 454 U.S. 312, 324-25 (1981); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996); *Mills v. Criminal District Court #3*, 837

F.2d 677, 679 (5th Cir. 1988).  The reason for this principle is that, when representing a criminal defendant in a state criminal proceeding, a defense attorney's professional and ethical obligations require him to act in a role independent of and in opposition to the State.  *West v. Atkins*, 487 U.S. 42, 50 (1988); *Polk County v. Dodson*, 454 U.S. at 318-19.  A criminal defense attorney does not ordinarily act under color of state law for the purpose of § 1983 because he is not acting on behalf of the State; he is the State's adversary.  *West v. Atkins*, 487 U.S. at 50; *Polk County v. Dodson*, 454 U.S. at 323 n.13; *Hudson v. Hughes*, 98 F.3d at 873 (holding a private criminal defense attorney was not a "state actor" and the plaintiff's civil rights lawsuit premised on alleged ineffective assistance by said counsel was not cognizable under Section 1983).

An exception to this general rule exists, however, when it is established that the criminal defense attorney engaged in intentional misconduct, such as conspiring with state authorities to deprive the criminal defendant of his liberty without due process of law.  *Tower v. Glover*, 467 U.S. 914, 921-23 (1984); *Mills v. Criminal District Court #3*, 827 F.2d at 679.  This narrow exception only applies to defeat a defendant's motion to dismiss or for summary judgment where there are specific facts alleged in support of a civil rights plaintiff's allegations of conspiracy. Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy.  *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991); *Streetman v. Jordan*, 918 F.2d 555, 557 (5th Cir. 1990); *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989), *cert. denied*, 493 U.S. 1083 (1990); *Brinkman v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986).  Conclusory allegations of conspiracy between a criminal defense counsel and prosecutors or government agents do not state a federal civil rights cause of action. *Mills v. Criminal District Court #3*, 837 F.2d at 679; *Gipson v. Rosenberg*, 797 F.2d 224, 225-26 (5th Cir. 1986), *cert. denied*, 481 U.S. 1007 (1987); *Russell v. Millsap*, 781 F.2d 381, 383 (5th

Cir. 1985), *cert. denied*, 479 U.S. 826 (1986); *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).  Furthermore, conclusory allegations regarding conspiracy in a Section 1983 lawsuit are insufficient to withstand either scrutiny under 28 U.S.C. § 1915(d) or a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Krueger v. Reimer,* 66 F.3d 75, 77 (5th Cir. 1995); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Turner v. Upton County,* 967 F.2d 181, 186 (5th Cir. 1992); *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991); *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990); *Streetman v. Jordan,* 918 F.2d 555, 557 (5th Cir. 1990); *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987).

Plaintiff's allegations in this lawsuit that his former state criminal defense attorneys conspired with state prosecutors and trial judges to convict plaintiff are unsupported by any specific facts showing that such conspiracies ever actually existed.  While plaintiff alleges his trial counsel failed to present exculpatory evidence, plaintiff fails to identify any such evidence.  Contrary to plaintiff's belief, the fact no knife was found at the scene of the assault plaintiff inflicted upon his victim does not create a reasonable doubt about plaintiff's use of a deadly weapon.  Plaintiff admits the victim testified at trial the plaintiff stabbed him.  The severity of plaintiff's victim's wounds was not in genuine dispute.  Recovery of the weapon itself was not a necessary prerequisite to a conviction or a finding plaintiff used a deadly weapon during that assault.

Plaintiff has not alleged any specific facts showing attorney Cox or attorney Tocci conspired with any person acting under color of state law to deprive plaintiff of any federal constitutional right or any federal statutory right.  Even assuming that plaintiff could establish that his defense counsel did render ineffective assistance in connection with an identified criminal proceeding, plaintiff would not thereby automatically establish a federal civil rights

cause of action, because a criminal defense attorney does not become a state or government agent or actor merely by so doing. *Briscoe v. LaHue*, 460 U.S. at 329 n.6. Plaintiff's civil rights claims against attorneys Tocci and Cox are frivolous.

## X. <u>Claims Against San Antonio Police Department</u>

Insofar as plaintiff seeks to recover monetary damages from the San Antonio Police Department based upon the allegedly wrongful actions of the employees or agents of that defendant, those efforts run afoul of the well-settled principle that vicarious liability does not apply to § 1983 claims. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (municipality could not be held liable under § 1983 absent proof of its failure to adequately train its employees rose to the level of deliberate indifference to the rights of its citizens); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978). Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability; the doctrine of *respondeat superior* does not apply to such actions. *See Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011). Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 169 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3059 (2011).

Generally, a supervisor may be held liable only if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in the plaintiff's injuries. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). A supervisor may be held personally

liable for inadequate supervision or a failure to train subordinates only where the failure to train or supervise amounts to deliberate indifference and is a proximate cause of a constitutional violation.  *See id.*; *Brown v. Callahan*, 623 F.3d 249, 254 n.1 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 2932 (2011).  Merely negligent or incompetent supervision cannot form a basis for liability under Section 1983; the supervisor's actions or inactions must rise to the level of "deliberate indifference." *Id. Porter v. Epps*, 659 F.3d at 446-47.

Plaintiff has alleged no specific facts showing that any person possessing final policymaking authority on behalf of the City of San Antonio or the San Antonio Police Department had any personal involvement in or personal knowledge of any of the matters about which plaintiff complains in this § 1983 lawsuit.  Insofar as plaintiff seeks to recover a judgment against the San Antonio Police Department based upon the events of August 30, 2012, plaintiff's claims are barred by the applicable two-year statute of limitations, for the reasons discussed above.  Plaintiff has failed to allege any specific facts showing that his federal constitutional rights were violated by any act or omission directly attributable to final City of San Antonio policymakers or to any official policy, long-standing custom, or wide-spread practice attributable to final City of San Antonio policymakers.

Plaintiff has brought suit in this lawsuit against a number of Bexar County and City of San Antonio officials and employees in their official capacities.  A suit against a public official in his or her "official capacity" is, in reality, a suit against the governmental entity the official represents.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-72 (185); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999); *Brooks v. George County, Mississippi*, 84 F.3d 157, 164 (5th Cir. 1996), *cert. denied*, 519 U.S. 948 (1996); *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

In order to recover a judgment against a local governmental entity under § 1983, a plaintiff must establish that he sustained a deprivation of constitutional or other federally-protected rights as a result of some official policy, practice, or custom of that governmental entity.  Although occasionally referred to as if they were three distinct creatures, a local governmental entity's official "policies," "practices," and "customs" are really three different terms for those actions which sufficiently bear the imprimatur of a governmental entity's final policy-makers to justify holding the governmental entity responsible therefor.  *Board of County Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. at 404-05; *Spiller v. City of Texas City, Police Department*, 130 F.3d 162, 167 (5th Cir. 1997); *Leffall v. Dallas I.S.D.*, 28 F.3d 521, 525 (5th Cir. 1994).  An official "policy" is most commonly defined as a policy statement, ordinance, regulation, or decision that is officially adopted or promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy making authority.  *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).  A municipal "policy" must be a "deliberate and conscious choice" by a municipal policy-maker.  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (*plurality*); *Gonzalez v. Ysleta I.S.D.*, 996 F.2d 745, 752-60 (5th Cir. 1993); *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992).  An official "custom" or "practice" is most commonly defined as a "persistent, widespread practice of municipal officials or employees," which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy; actual or constructive knowledge of such custom or practice must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.  *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012); *Johnson*

*v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d at 309; *Burge v. St. Tammany Parish*, 336 F.3d at 369 (holding the same); *In re Foust*, 310 F.3d at 861-62; *McClendon v. City of Columbia*, 258 F.3d 432, 441-42 (5th Cir. 2001).

As is true for supervisory governmental officials, *respondeat superior* or vicarious liability is not a basis for recovery against a municipality or governmental entity under § 1983. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122 (1992); *Monell v. Department of Social Services of the City of New York*, 436 U.S. at 691-94; *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d at 308; *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001) (holding a County may not be held liable under a *respondeat superior* theory), *cert. denied*, 534 U.S. 817 (2001) ; *Doe v. Dallas I.S.D.*, 153 F.3d at 215; *Esteves v. Brock*, 106 F.3d at 677;  *Flores v. Cameron County, Texas*, 92 F.3d 258, 263 (5th Cir. 1996); *Grabowski v. Jackson County Public Defenders Officer*, 79 F.3d 478, 479 (5th Cir. 1996); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992); *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992), *cert. denied sub nom. Bassler v. County of Wilson*, 506 U.S. 874 (1992).

Likewise, a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.  *Board of Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. at 403; *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004); *Gros v. City of Grand Praire, Texas*, 181 F.3d 613, 615 (5th Cir. 1999).  It is only when the execution of the government's policy or custom inflicts the injury that the governmental entity may be held liable under § 1983. *Board of Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. at 403; *Victoria W. v. Larpenter*, 369 F.3d at 482; *Gros v. City of Grand Praire, Texas*, 181 F.3d at 615.

When the discretionary decisions of a local governmental official are constrained by official governmental policies not of that official's making, the official's disobedience of, or departure from, those policies is not considered an act of the governmental entity for § 1983 purposes. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988) (*plurality*); *McConney v. City of Houston*, 863 F.2d 1180, 1184 & n.2 (5th Cir. 1989). Thus, when a non-policy-making local governmental employee acts in a manner inconsistent with established governmental policy, the governmental employer cannot be held liable therefor under § 1983. *City of St. Louis v. Praprotnik*, 485 U.S. at 121-22; *McConney v. City of Houston*, 863 F.2d at 1184 & n.2.

The Fifth Circuit has long made clear a § 1983 plaintiff must establish a causal connection between an alleged violation of the plaintiff's constitutional rights and the municipality's policies or customs. *See, e.g., Bishop v. Arcuri*, 674 F.3d at 467 ("A municipality is liable only when its policy is the 'moving force' behind the suffered injury, but when a municipal policy itself violates federal law, such a policy necessarily constitutes the 'moving force.'" (*citation omitted*)); *Spiller v. City of Texas City, Police Department*, 130 F.3d at 167.

Municipal liability under § 1983 attaches only when the official responsible for establishing final policy with respect to the subject matter in question makes a deliberate choice to follow a course of action from among various alternatives. *Board of Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. at 404-05; *City of St. Louis v. Praprotnik*, 485 U.S. at 121-22; *Pembaur v. City of Cincinnati*, 475 U.S. at 483-84 (*plurality*); *Rhyne v. Henderson County*, 973 F.2d at 392. Thus, mere negligence on the part of local governmental final policy-makers does not give rise to governmental liability under Section 1983. *Daniels v. Williams*, 474 U.S. at 331-34; *Davidson v. Cannon*, 474 U.S. at 347-48.

Accordingly, it is hereby **ORDERED** that:

1.  The referral of this cause to the Magistrate Judge is **WITHDRAWN.**

2.   All of plaintiff's claims against the defendants named or identified in plaintiff's Amended Complaint, filed May 31, 2016 (ECF no. 10), are **DISMISSED WITHOUT PREJUDICE as frivolous, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).**

3.  **The Clerk of Court shall send a copy of this Memorandum Opinion and Order and the Final Judgment in this case to the Pro Se Staff Attorney, Attn.: Keeper of the "Three Strikes List," U.S. District Court for the Eastern District of Texas for the Tyler Division, 211 West Ferguson, Tyler, Texas 75702, so this case may be recorded in the "Three-Strikes List."**

4.  The Clerk of this Court shall transmit Certified a copy of this Memorandum Opinion and Order and the Final Judgment in this cause to the TDCJ Office of General Counsel, P.O. Box 13084, Austin, Texas 78711 for determination of whether Plaintiff should lose accrued good conduct time credits pursuant to Texas Government Code § 498.0045.

5.  All pending motions are **DISMISSED AS MOOT.**

    **It is so ORDERED.**

    **SIGNED this 16th day of June, 2016.**

_____

David Alan Ezra
Senior United States Distict Judge